Richard **RODLIN**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

Civ. A. No. 88–5412 (SSB).

United States District Court,
D. New Jersey.

Aug. 23, 1990.

---

Frank A. Cristaudo, West Deptford, N.J., for plaintiff.

Office of the U.S. Atty. by Susan Steele, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

BROTMAN, District Judge.

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of a final determination by the Secretary of Health and Human Services ("Secretary") to offset plaintiff's disability insurance benefits due to his receipt of a lump sum worker's compensation award. Plaintiff contends that the Secretary's decision to prorate the lump sum award based on the periodic rate of benefits he previously received is irrational and that the Secretary should prorate the lump sum over his life expectancy. For the reasons stated herein, this court will affirm the decision of the Secretary.

## I. FACTS AND PROCEDURE

Plaintiff is a 50 year-old painter and paperhanger. On March 1, 1985, while at work, plaintiff slipped on some liquid on a tile floor and fell, injuring his back. He originally applied for Social Security disability benefits on August 20, 1986. This claim was initially denied and, upon reconsideration, it was denied a second time. After a hearing before an Administrative Law Judge ("ALJ") on May 18, 1987, the Secretary awarded plaintiff disability benefits with an onset date of March 1, 1985.

In addition to the Social Security benefits, plaintiff received periodic state worker's compensation payments between May 3, 1985 and May 20, 1986. These payments were disbursed at a rate of $269.00 per week. In June of 1986, plaintiff was discharged by his doctor to return to work and, accordingly, the state discontinued his worker's compensation payments. Plaintiff, however, complained of continuing pain and did not actually return to work. Thereafter, plaintiff sought the restoration of his worker's compensation benefits from the state. On April 20, 1987, plaintiff reached a settlement with the state pursuant to N.J.Stat.Ann. § 34:15–20 (West 1988). This agreement provided that the state would pay plaintiff a $35,000.00 lump-sum payment in lieu of periodic payments; after attorney's fees of $7,000.00, plaintiff received a total of $28,000.00. This settlement, by its terms, had the effect of a

dismissal with prejudice of plaintiff's claim to worker's compensation benefits and constituted a "complete and absolute surrender and release of all rights arising out of this/these [worker's compensation] claim(s)." (Tr. 210).

As a result of the ALJ's May 18, 1987 decision allowing plaintiff to collect Social Security disability payments, plaintiff received a Notice of Award from the Secretary on June 10, 1987. The notice advised him that he would receive an initial monthly benefit amount of $535.50 and that the amount of his monthly Social Security benefit would be reduced by a "worker's compensation offset" because he received a lump-sum worker's compensation award. Plaintiff appealed this offset to the Secretary for reconsideration and, in a reconsideration decision dated December 28, 1987, the Secretary concluded that the worker's compensation offset was proper.

To calculate the offset, the Social Security Administration ("SSA") converted plaintiff's lump sum settlement into a theoretical stream of periodic worker's compensation benefits. In converting the lump sum to determine the offset, SSA followed instructions issued in its Program Operation Manual System ("POMS"), at section D1 11501.235C (July, 1986). These instructions set forth a three-step procedure for prorating a state lump sum award "at an established weekly rate." SSA uses the three steps in priority order as follows:

1. The rate specified in the lump-sum award ["Step 1"].
2. The periodic rate paid prior to the lump-sum (if no rate is specified in the lump-sum award) ["Step 2"].
3. If WC [worker's compensation], the State's WC maximum in effect in the year of injury. This figure can be used if no rate is specified in the award or there was no preceding periodic benefit. It can also be used pending post-adjudicative development of the rates specified in 1 or 2 ["Step 3"].

*Id.* The ALJ skipped Step 1 because plaintiff's settlement agreement did not specify a periodic rate. Rather, the Secretary employed Step 2, dividing $28,000.00, the amount plaintiff received in settlement, by $269.00, the amount he has previously received per week. This calculation resulted in a determination that the lump sum payment represented a substitute for periodic payments for 130 weeks. The Secretary, therefore, reduced plaintiff's Social Security benefits for a period of 130 weeks to compensate for the lump sum payment that he received. (Tr. 223–24).

Plaintiff again appealed this decision at a hearing held on May 24, 1988. Plaintiff testified that: (1) the lump sum award from worker's compensation was intended to compensate him for his future medical bills; (2) that he would have future medical bills if he could find a physician; (3) that he used the entire $28,000.00 to pay bills that had accrued while he was unable to work; and (4) that he would not have accepted the lump sum award if he had known that SSA would offset his disability payments. Plaintiff claimed that the method used to prorate the lump-sum award was irrational. Plaintiff relied exclusively on *Sciarotta v. Bowen*, 735 F.Supp. 148 (D.N.J.1989), in which the United States District Court for the District of New Jersey held that Step 3 is irrational because it permits the SSA to use the maximum allowable periodic payment as a base for proration even though a settlement, by its nature, represents less than the maximum amount. Plaintiff asserted that the more rational method is to prorate the award over his life expectancy. Prorating the award as plaintiff suggests would reduce the offset to his Social Security disability payments and increase his monthly income.

By hearing decision dated July 20, 1988, the ALJ held that the worker's compensation offset calculation was proper. The Appeals Council denied plaintiff's request for a review of the hearing decision and plaintiff took an appeal to this court. In an order dated May 3, 1989, this court stayed the matter pending the district court's decision in *Sciarotta*, filed on August 9, 1989.

In the current action, plaintiff claims that the Secretary's decision to prorate his lump-sum award based on the previous periodic rate is irrational and, instead, the

Secretary should prorate the lump-sum payment over his life expectancy. Plaintiff bases his claims on several assertions: (1) the Secretary's ruling is arbitrary and capricious; therefore, this court should overrule the Secretary's decision and require the lump-sum award to be prorated based on his life expectancy; (2) the Secretary's decision to use the previous periodic rate to calculate the offset is irrational because it does not consider plaintiff's dependents' rights, which he waived when he accepted the lump-sum award; (3) the dismissal notice stipulating the acceptance of the lump-sum award and the statute regulating the approval of the lump-sum award both imply that, if no time period is mentioned in the dismissal notice, then the payment is to extend over the life expectancy of the claimant; and (4) the Secretary's use of the $269.00 periodic rate is irrational because the Secretary could have used either of two previous periodic rates: $269.00, the amount that plaintiff received while collecting state worker's compensation or $0.00, the amount that plaintiff received during the one year period in which he received no benefits at all.

The Secretary argues that methods of calculating the lump-sum offset are "interpretive rules" within the Secretary's discretion. He claims that, as long as this discretion is not grossly violated, this court must uphold these "rules." Defendant, additionally, contends that Step 2 is not arbitrary and capricious and, therefore, the court can not overrule its use based on irrationality. He claims that Step 2 rationally approximates, as nearly as practicable, the offset that would have been applied had the periodic payments from worker's compensation resumed, citing 42 U.S.C.A. § 424a(b) (West Supp.1990) (statute controlling Secretary's discretion in promulgating lump-sum offset calculation methodology).

## II. DISCUSSION

### A. *Standard of Review*

Generally, a district court must affirm the decision of the ALJ if substantial evidence supports his findings of fact. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir.1983). Where the reviewing court must determine whether the Secretary applied the proper standard of law, however, the standard of review is plenary. *Wilkerson v. Bowen,* 828 F.2d 117, 119 (3rd Cir.1987). *See also Worley v. Harris,* 666 F.2d 417, 420 (9th Cir.1982) (questions of law entitled to broader scope of review). In reviewing whether the Secretary applied the proper law in his calculations for lump-sum offsets, this court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C.A. § 706 (West Supp.1990). The interpretation of the Secretary is entitled to deference; nevertheless, it does not bind the reviewing court as it must be examined as would any other question of law. *Department of Health Services v. Department of Health and Human Services,* 853 F.2d 634, 636 (9th Cir. 1988).

### B. *The Secretary Did Not Exceed His Discretion*

The Social Security Act ("Act") provides that any person who is "disabled" as defined in the Act is eligible to receive Social Security benefits. 42 U.S.C.A. § 423(a) (West Supp.1990). The Act, however, imposes limits on the amount of benefits that an individual may collect from the combination of both federal Social Security benefits and state worker's compensation benefits. *See* 42 U.S.C.A. § 424a(a)(3)–(6) (West Supp.1990). The provision reflects Congress's determination that the government has a lesser obligation to provide federal disability benefits when the sum of the federal and private payments rise to a certain percentage of the disabled person's prior income. *Arneson v. Heckler,* No. 83–C–4880, slip op. at 1, 1984 WL 6592 (N.D.Ill. Aug. 3, 1984). According to the statutory formula, if the total monthly benefits exceed eighty percent of an individual's prior average earnings, then the claimant's Social Security benefits will be reduced to the extent that the eighty percent limit is surpassed. 42 U.S.C.A. § 424a(a)(5) (West Supp.1990). *See also* 20 C.F.R.

§ 404.408 (1989). Plaintiff's monthly Social Security benefit before the offset was $535.50; however, the SSA completely withheld plaintiff's monthly benefit, except for a small $27.70 per month, as a result of the offset calculated according to Step 2.

Plaintiff received periodic Social Security payments and a lump-sum worker's compensation award. Because the Secretary prorated the lump-sum worker's compensation award over 130 weeks, at $269.00 per week, rather than over plaintiff's life expectancy which would result in a much lesser weekly amount, the combination of Social Security benefits and worker's compensation benefits exceeded eighty percent of plaintiff's prior average monthly earnings for those 130 weeks. Accordingly, plaintiff's federal benefits were withheld for that period. Plaintiff claims that, had the lump sum been prorated over his life expectancy of twenty-six years, the sum of the monthly worker's compensation equivalent and his federal Social Security benefits would not have exceeded eighty percent of his monthly average wages.

Section 424a addresses situations in which the claimant receives periodic worker's compensation payments over the same period that he or she is eligible for federal Social Security benefits. 42 U.S.C.A. § 424a(a)(2) (West Supp.1990). The Act also provides for certain instances where a state worker's compensation payment is disbursed as a lump sum payment. Section 424a(b) of the Act gives the Secretary the authority to determine the appropriate method of prorating a lump sum award. *Id.* § 424a(b). The proration offset implemented by the SSA "shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction" in benefits payable on a monthly basis. *Id.*

The method of proration is "an interpretive rule" designed by the SSA to give guidance to its staff as to how to administer or interpret a given rule or statute. *New Jersey v. Department of Health and Human Services,* 670 F.2d 1262, 1281–82 (3d Cir.1981); *Sciarotta,* 735 F.Supp. at 150. An interpretive rule is the agency's interpretation of a statute and is, therefore, not binding on this court. *Sciarotta,* at 150. To the extent the Administrator's interpretation "represents a reasonable accommodation of conflicting policies," however the agency's interpretation is entitled to deference. *Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984) (quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

The regulation governing the proration of the lump sum award vests complete discretion as to the method of calculating the offset in the Secretary. 20 C.F.R. § 404.408(g) (1989). Additionally, the United States Court of Appeals for the Third Circuit has noted that, "because Congress has delegated to the Secretary the responsibility for administering the complex programs, we must defer to [his] construction, as long as it is reasonable and not arbitrary and capricious." *Wheeler v. Heckler,* 787 F.2d 101, 104 (3d Cir.1986). Unless the Secretary violated his administrative discretion by promulgating rules that are arbitrary and capricious, his determination of an appropriate method by which to prorate the lump sum worker's compensation payment is afforded a substantial degree of latitude. *Id.*

At least one court has upheld the Secretary's use of Step 2 to calculate the appropriate offset. In *Mann v. Heckler,* 1A Unempl.Ins.Rep. (CCH) ¶ 16,952 (D.Me. Mar. 17, 1986), *aff'd,* 802 F.2d 440 (1st Cir.1986) (reprinted in Soc.Sec.Rptr.Serv. 661 (West Supp.1989) (Soc.Sec.Ruling 87–21c)), the United States District Court for the District of Maine found that the Secretary did not violate his administrative discretion in applying the Step 2 proration method and that the promulgation of this step was not irrational. In *Mann,* the SSA prorated plaintiff's two lump-sum worker's compensation payments based on his previous monthly worker's compensation payment. Plaintiff claimed that the lump-sum payments represented a settlement of claims extending over his entire lifetime and, therefore, the lump-sum payments

should be prorated according to his life expectancy. The court found that the Secretary properly exercised his administrative discretion to calculate a reduction that will "approximate as nearly as practicable" a reduction based upon the receipt of monthly payments and that "the court cannot say that the Secretary has violated that discretion." *Id.* at 662. The court, furthermore, found that there was "no legal basis for assuming that the settlement was based on plaintiff's life expectancy" and, therefore, the Secretary was correct in using the rate paid prior to the lump-sum award in calculating the offset. *Id.*

Similar to *Mann*, plaintiff's compromise settlement with the state worker's compensation carrier here does not explicitly state a rate for proration purposes. Contrary to plaintiff's argument, neither the Worker's Compensation Dismissal Notice nor N.J. Stat.Ann. § 34:15–20 (West 1988) suggests that the settlement amount was intended to extend over the lifetime of plaintiff. *Id.* Additionally, the lack of specificity in the dismissal notice or the statute regulating lump-sum awards does not imply that the lump-sum award was intended to compensate plaintiff based on his life expectancy. *Id.* As in *Mann*, the dismissal notice "merely provides that the employer shall be discharged from all further liability upon payment of a lump sum." *Id.* at 663. If the dismissal notice does not mention a date on which to base the lump-sum payment, this court can not assume that the award was intended to compensate the claimant for his entire life. The court finds no rational distinction between the case at bar and *Mann*.

■ The court concludes, therefore, that the Secretary's promulgation of Step 2 did not exceed his authority under the statute and is not arbitrary and capricious. In calculating the equivalent periodic payments represented by the lump sum award, the Secretary used the rate at which plaintiff previously received worker's compensation payments between August 1985, the date plaintiff was first entitled to receive benefits, and May 20, 1986. These payments, $269.00 per week, stopped only

when plaintiff's physician discharged him to return to work. Accordingly, this figure represents a fair estimate of the dollar amount that plaintiff would have again received had periodic payments resumed. The approach of Step 2 presents a rational method by which to base the proration of the lump sum award so that it "approximate[s] as nearly as practicable" the reduction that would be applied had periodic payments been resumed. *See* 42 U.S.C.A. § 424a(b) (West Supp.1990).

Furthermore, this court rejects plaintiff's contention that the Secretary's failure to consider expenditures for medical purposes is arbitrary and capricious. Even if medical treatment were provided by the worker's compensation carrier in addition to the $269.00 periodic payment, as plaintiff claims, the Secretary did not exceed his authority by excluding this amount to determine the prior periodic payment for the purpose of the Step 2 calculation. Expenditures incurred for medical purposes are excluded from calculating the reduction for a lump sum offset. *See* 20 C.F.R. § 404.408(d) (1989). The Secretary, therefore, did not err in using the $269.00 figure for the purposes of prorating the lump sum award.

## C. *Waiver of Dependents' Rights*

■ Plaintiff asserts that in determining the rationality of Step 2, the court should consider that, by accepting the lump-sum award, plaintiff waived his dependents' rights under New Jersey's worker's compensation law. *See* N.J.Stat.Ann. § 34:15–20 (West 1988). He claims that a portion of the settlement was made in exchange for his dependents' rights; accordingly, that portion should not be considered in calculating the offset to his benefits. He claims that this factor is not considered in the proration according to Step 2 and, therefore, Step 2 is irrational.

In *Worley v. Harris*, 666 F.2d 417, 421 (9th Cir.1982), the United States Court of Appeals for the Ninth Circuit rejected this argument and held that, because the amount that could be claimed by plaintiff's dependents falls outside the scope of 20

C.F.R. § 404.408(d) (1989), the Secretary need not consider claims of plaintiff's dependents in calculating the lump-sum offset. 666 F.2d at 421. The regulation specifically sets forth those items excluded in the computation of the reduction of benefits. 20 C.F.R. § 404.408(d) (amounts for medical, legal, or related expenses excluded from calculation). Additionally, the regulations states "Any expenses not established by evidence required by [SSA] or not reflecting a reasonable estimate of the individual's actual future expenses *will not be excluded.*" *Id.* (emphasis added). Although the *Worley* court found that claimant's wife had surrendered something of value in the settlement of plaintiff's claim, it could not "construe this surrender as being a 'medical, legal or related' expense in connection with appellant's workmen's compensation claim." *Worley,* 666 F.2d at 421. The court noted, however, that Congress could not have intended that a person's disability benefits be offset by money intended to settle the claims of another. *Id.* Under the facts presented, however, the court found that plaintiff failed to prove that any amount of the lump-sum settlement was intended to settle his wife's claims and that the Secretary had no duty to assign an amount to her speculative and unliquidated claim. *Id.*

This court finds that the analysis in *Worley* is sound. Under New Jersey's worker's compensation law, N.J.Stat.Ann. § 34:15–20 (1988), the settlement agreement "is final and conclusive upon the employee and the employee's dependents." *Id.* Thus, dependents do surrender some rights when the employee enters a settlement agreement with the state for worker's compensation benefits. Nonetheless, the Secretary is not required to assign a value to a dependent's rights when calculating the appropriate offset. *Worley,* 666 F.2d at 421. In the absence of evidence that a portion of the settlement here was in exchange for his dependent's rights, plaintiff can not prevail with conclusory allegations that a portion of the settlement proceeds were intended for his dependents. *Id.*

Accordingly, this court finds that, in calculating the offset here, the Secretary was not required to consider the waiver of plaintiff's dependents' rights under the settlement agreement absent specific evidence that a portion of the settlement proceeds were in exchange for dependents' rights. This court agrees with the *Worley* court's analysis and, accordingly, finds that the Secretary's calculation under Step 2 was not irrational in failing to exclude amounts received in the settlement for dependents' waivers.

### D. *Previous Rate of Benefits*

 Plaintiff contends that the use of his previous rate of benefits is irrational. In support of this contention, plaintiff cites this court's recent decision in *Sciarotta v. Bowen,* 735 F.Supp. 148 (D.N.J.1989), arguing that *Sciarotta* requires that the court reject Step 2 as well. In *Sciarotta,* the United States District Court for the District of New Jersey held that Step 3 is irrational because it permits the SSA to use the maximum allowable periodic payment as a base for proration even though a settlement, by its nature, represents less than the maximum amount. *Sciarotta,* 735 F.Supp. at 154. In *Sciarotta,* the claimant opted to settle his claim for worker's compensation benefits with the state and did not receive the maximum allowable; therefore, the court found that the Secretary's use of the maximum rate to calculate the offset was inappropriate. *Id.* at 153. The court reasoned that applying the maximum rate in the offset calculation was irrational because it had no logical or historical significance to the particular claimant. *Id.* at 154. Although the *Sciarotta* court accepted the principle of proration, it found that only the Secretary's use of Step 3 was arbitrary. *Id.* at 154.

Plaintiff asserts here that, although *Sciarotta* concerns only Step 3, the same reasoning can be applied to find Step 2 invalid. Step 2, however, concerns the use of a previous periodic rate to prorate the lump sum award, while Step 3 concerns the use of the maximum periodic rate in effect in the year of injury. Therefore, *Sciarotta* is clearly distinguishable.

The use of the periodic rate that plaintiff received between August 1985 and May 20,

1986 provides a reasonable bench mark to estimate the amount that would have been received had the worker's compensation benefits continued. This periodic rate, therefore, allows the Secretary to approximate as closely as possible the offset which would have been applied had the award been received as a stream of periodic payments. Accordingly, unlike Step 3, the Secretary's use of the previous periodic rate in Step 2 provides a prudent and well-advised basis to calculate the offset. Additionally, plaintiff's assertion that it is equally as rational to apply the rate of $0.00 that he received from June 1986 to June 1987 is unfounded. This period represents the time in which plaintiff disputed the withholding of his worker's compensation benefits. The Secretary's use of the periodic rate that plaintiff previously received is reasonable, as it represents the periodic rate that most closely resembles the periodic rate that would have been paid had the benefits resumed.

## III. CONCLUSION

The Secretary's proration of the lump sum offset based on the previous periodic payments received by plaintiff, rather than utilizing the life expectancy of the plaintiff, is not arbitrary or capricious and is well within the discretion of the Secretary. Accordingly, the court will affirm the decision of the Secretary.

An appropriate order will be entered.