**Terrance DUNN, et al., Plaintiffs,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. 90–124–CMW.**

United States District Court,
D. Delaware.

Oct. 1, 1991.

Neilson C. Himelein, Community Legal Aid Soc. Inc., Wilmington, Del., for plaintiffs.

William C. Carpenter, Jr., U.S. Atty., Carolyn T. Greene, Asst. U.S. Atty., Wilmington, Del. (Eileen Bradley, Chief Counsel, Region III, Margaret Krecke, Asst. Regional Counsel, Office of General Counsel, of counsel), Philadelphia, Pa., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The Court, on February 6, 1991, denied Defendant's motion to dismiss for lack of jurisdiction and for improper venue. On February 22, 1991, Defendant moved, pursuant to Rule 60(b)(6), for the Court to alter or amend the February 6, 1991 Order because, according to the Defendant, the challenged procedure has been revised and this action effectively disposed of all of the Plaintiffs' claims. Also pending is Plaintiffs' motion for class certification. These issues have been fully briefed and are

ready for decision. For the reasons stated below, the Court will grant Defendant's motion to alter or amend the Court's February 6, 1991 order and dismiss the action, rendering the class certification issue moot.

## I. *Background* [1]

Plaintiffs, Terrance Dunn and Hilton Porter brought a class action [2] seeking declaratory, injunctive and mandamus relief [3] against the Secretary of Health and Human Services ("Secretary"). Specifically, the named Plaintiffs challenge the validity of the Secretary's routine procedures for assessing whether Supplemental Social Security ("SSI") benefits should be continued during a recipients hospitalization.

Procedures followed by the Secretary are found in the Program Operations Manual System, commonly referred to as POMS. Some background concerning the POMS in effect at the time this case was filed is necessary to understand the controversy and the effect of the change.

To continue receiving SSI benefits while hospitalized the POMS required two statements to be submitted by the tenth day of the month following the month of hospitalization. First, the SSI recipient had to file a Statement of Need. The purpose of the Statement of Need was to provide proof that the recipient needed funds to meet expenses of maintaining a residence to which the recipient might return following hospitalization. The POMS also required an attending physician to submit a statement that the institutionalization was not expected to be for more than three months.

Under the POMS then in place, an untimely submission by the physician could, under certain circumstances, be excused and SSI benefits continued. However, the POMS did not provide any "good cause exception" for the filing of the Statement

of Need. Thus, if the Statement of Need was late, for whatever reason, the recipient would not be entitled to benefits during their hospitalization. It was this aspect of the POMS that the Plaintiffs challenge alleging the procedures violate 42 U.S.C. §§ 1382(e)(1)(G), 1382(e)(1)(H) and the Due Process Clause of the Fifth Amendment. Further, Plaintiffs contend that the Secretary violated the provisions of the Administrative Procedure Act by way of implementing binding POMS without publication, 5 U.S.C. § 701 *et seq.;* that the POMS are arbitrary, capricious and an abuse of discretion; and that the Secretary's determinations were erroneous, contrary to law and not supported by substantial evidence.

The Defendant asserts that the procedures at issue here were altered after this action was commenced and the new procedures overcome the allegations of the plaintiffs. Although the POMS still require both a Statement of Need and a physicians statement to be submitted, the time frame has been changed. In order to qualify for continued benefits, the physicians statement and the Statement of Need now must be submitted on the basis of 90 day/day of discharge rule.

The 90 day/day of discharge rule allows the statement to be submitted 90 days after hospitalization or on the day of discharge whichever is earlier. Both statements are deemed complete upon actual receipt by the Social Security Administration or postmark by the relevant date. [4] It is on this procedural background that the Court must decide this motion.

## II. *Discussion*

The issues present are whether any case or controversy exists and whether the issue is ripe for review, thus permitting this

---

1. For a detailed account of the statutory background see the February 6, 1991 opinion which accompanied the order at issue. 758 F.Supp. 210 (D.Del.1991).

2. On April 17, 1990 Plaintiffs filed a motion for class certification. This motion was stayed until resolution of the Defendant's motion to dismiss. Due to this intervening motion by the Defendant, the motion remains pending.

3. The Court declined to exercise mandamus jurisdiction in the February 6, 1991 Order as plaintiffs have adequate administrative and judicial remedies. *Opinion* 758 F.Supp. at 216.

4. Prior policy only considered a statement complete upon actual receipt by the Social Security Administration.

Court to exercise jurisdiction. Plaintiffs position is two-fold. First, plaintiffs contend that pursuant to the old procedure people were injured and that injury will not be redressed absent judicial intervention. (*Plaintiffs' Supplemental Brief in Opposition to Defendant's Motion to Alter or Amend Order*, Docket Item 33, p. 7). With respect to this, plaintiffs claim that the defendant's readjudication of their claims does not disqualify them from being class representatives. (*Id.*, at p. 8). Second, plaintiffs claim that even if the Secretary reevaluates all of the claims pursuant to the new policy, not all class members would have their injury redressed because no "good cause exception" exists. (*Id.*, at p. 9).

The Defendant's position is that the Secretary has ordered that all claimants who have been denied benefits since July 1988 for failure to timely file the Statement of Need be entitled to have their case reopened and readjudicated under the revised policy. Both named plaintiffs filed their Statement of Need within the time frame set by the new policy. Thus, the named Plaintiffs have had their cases reviewed and favorably decided for them under the new policy, the issue is no longer ripe for review and this Court should decline to issue an advisory opinion. Further, the Defendant contends that no one has been brought to their attention that would require a good cause extension from the new 90 day/day of discharge rule and, therefore, there is no live case before the Court.

Neither side appears to contest whether the named Plaintiffs claims have become moot through the action of the Defendant, the only question remains whether the case can proceed in light of the fact that named Plaintiffs injury has been satisfied.[5] The Court views this question as requiring an inquiry into mootness and the ability of the named plaintiffs to represent the class with respect to both the old and the new policy.

■ "Simply stated a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (*quoting, Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). Thus, the action taken by the Secretary in changing the policy apparently moots the plaintiffs individual claims.

■ Generally speaking, however, when a Defendant voluntarily takes action during the pendency of litigation that would normally render an issue moot, the Court's power to hear and determine the case is unaffected. *Id.* (*quoting, United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1935)). The United States Supreme Court addressed the question of whether an issue was mooted by a defendant's voluntary action twice in the 1982 term.

In *Princeton University v. Schmid*, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982), the University had amended the challenged regulation while the case was on appeal, the Court held:

> The opinion below rested on the absence of a reasonable regulatory scheme governing expressional activity on University property, but the regulation at issue is no longer in force ... Thus the issue of the validity of the old regulation is moot, for this case has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law." *Hall v. Beals*, 396 U.S. 45, 48 [90 S.Ct. 200, 201, 24 L.Ed.2d 214] (1968) (*per curiam*).

*Princeton University*, 455 U.S. at 103, 102 S.Ct. at 869.

Following, in *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) the Court held:

> It is well settled that a Defendants voluntary cessation of a challenged practice does not deprive a Federal Court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question

---

5. Because both sides refer to the old (tenth day of the following month) and the new (90–day/ day of discharge) procedures the Court will consider both in deciding this motion.

whether a court should exercise its power to enjoin the Defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*City of Mesquite*, 455 U.S. at 289, 102 S.Ct. at 1074.

In a footnote by Justice White, concurring in part and dissenting in part in the *City of Mesquite* decision, he explained the opposing positions taken by the Court on this issue as follows:

> I agree that this issue has not been mooted by the city's revision of the ordinance. This conclusion is not inconsistent with our recent disposition of *Princeton University v. Schmid, ante*, p. 100 [102 S.Ct. p. 867] (*per curiam*). In that case, Princeton University's regulations governing solicitation and similar activity on University property were held invalid by the New Jersey Supreme Court. While the case was pending before the New Jersey court, Princeton substantially amended the contested regulations. On appeal to this Court, we held that the validity of the old regulations had become a moot issue. Unlike the city of Mesquite, Princeton gave no indication that it desired to return to the original regulatory scheme and would do so absent a judicial barrier. In this case, as noted in the Court's opinion, Mesquite "has announced just such an intention." *Ante*, 455 U.S. at 289, n. 11, 102 S.Ct. at 1075, n. 11. Because the test of whether the cessation of allegedly illegal action moots a case requires that we evaluate the likelihood that the challenged action will recur, *County of Los Angeles v. Davis*, 440 U.S. 625 [99 S.Ct. 1379, 59 L.Ed.2d 642] (1979), it is on this basis that our disposition of the two cases is consistent.

*City of Mesquite*, 455 U.S. at 296, fn. 19, 102 S.Ct. at 1078, fn. 19 (White, concurring in part and dissenting in part). There appears no reason to expect the Secretary to return to the old policy and, thus, any alleged injury pursuant to the old policy is rendered moot by the new policy.

 The Court finds not only the named plaintiffs claims are mooted but also all potential class members claiming injury under the old procedures are moot. This finding is due, in part, to the fact that the intervening steps taken by the Secretary put in place a measure to remedy any injury claimed by the old procedure and, therefore, the effect of the alleged violation has been eradicated. *County of Los Angeles v. Davis*, 440 U.S. at 631, 99 S.Ct. at 1383.

The plaintiffs have moved, pursuant to Rule 23, to certify the following class:

> All recipients of Supplemental Security Income ("SSI") residing in the area encompassing the Third Circuit Court of Appeals, whose benefits have been or are presently being or will be suspended during or following a recipient's temporary hospitalization in a "public institution" or whose benefits received during the temporary hospitalization were considered to be overpayments, based on a determination that the recipient's statement of need was either not submitted or was not submitted timely.

*Plaintiffs Motion for Class Certification* (Docket Item 7). Thus, the Court concludes that with respect to those persons "whose benefits have been or are presently being ... suspended during or following a recipients temporary hospitalization ... or whose benefits ... were considered overpayments, based on a determination that the recipient's statement of need ... was not timely submitted" have no cognizable claim as there exists no live controversy among the parties.

 Although the named plaintiffs are correct in stating that even though their claims have been determined to be moot they may still represent a class, all of the cases that support this position had defined a class that potentially had class members whose claims were not moot. *United States Paroled Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir.1987); *Wilson v. Sullivan*, 709 F.Supp. 1351 (D.N.J.1989). Unlike those cases, the case at bar has no known persons remaining that were injured by the old

policy and cannot be remedied pursuant to the new procedures. The Court concludes that a named plaintiff whose claim has been deemed moot cannot represent a class unless some class member may have a cognizable claim under the challenged practice. Here, because no members can be identified as having a live claim regarding the old procedure, the named plaintiffs cannot represent a class of persons with moot claims. (*See, Wilson v. Sullivan*, 709 F.Supp. at 1356 where the Court held: "A plaintiff whose personal claim has become moot while seeking class certification has the requisite personal stake in an action to prevent dismissal for mootness *as long as she seeks class certification on behalf of others whose claims are not moot.*" citing, *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980) (emphasis added)).

■ The plaintiffs would then argue that there remains a portion of the class that has not been dismissed. Specifically, those persons "whose benefits ... will be suspended during or following a recipient's temporary hospitalization ... or whose benefits received during the temporary hospitalization were considered to be overpayments, based on ... the recipient's statement of need ... was not submitted timely."[6] Those persons who may be injured in the future or have a past injury that cannot be rectified by the 90–day/day of discharge rule have an arguable injury however, the Court finds that any alleged

future injury under the new procedure is not ripe for review.

■ The Court concludes that the named plaintiffs, whose claims are moot, cannot rely on speculative future injury of an alleged class to get beyond a finding that the action is non-justiciable due to being moot when the future claims are not ripe for review.[7]

Rule 60(b)(6) is intended to provide a means to accomplish justice in extraordinary circumstances where, absent relief, an extreme and unexpected hardship would occur. *Kock v. Government of V.I.*, 811 F.2d 240, 246 (3d 1987); *Boughner v. Sec. of Health Ed. & Welf., U.S.*, 572 F.2d 976, 977–978 (3d 1978). The burden is on the party seeking relief to show that such a hardship would occur. *Boughner*, 572 F.2d at 978. The Court concludes that an extreme and unexpected hardship would occur in this case were the Court to exercise jurisdiction. Any person who may have suffered an injury pursuant to the challenged POMS has an administrative remedy available and those persons who may, in the future, experience an injury under the new POMS may, when injured, bring an action challenging the new POMS. To require the Secretary to defend his procedures prior to any injury would be to issue an advisory opinion with no case or controversy present.

### III. *Conclusion*

For the reasons stated above, the Defendant's motion to alter or amend the February 6, 1991 Order is GRANTED. This ac-

---

6. In essence, this would include both persons with future injury under the 90–day/day of discharge rule and those persons who, upon re-evaluation under the 90–day/day of discharge rule, still would not qualify for continued benefits under the new procedure.

7. Further, the Court finds that even if the claims were considered ripe for review, the named plaintiffs would not be proper class representatives.

Rule 23 which provides for class certification requires that each portion of Rule 23(a) be met before turning to Rule 23(b) to determine the appropriateness of the case as a class action. One requirement in Rule 23(a) is that the claims or defenses of the representatives be typical of the class claims. Fed.R.Civ.P. 23(a)(3). Thus,

typicality is concerned with whether the named plaintiff's individual circumstances are similar and the legal theory which the claims rely on comport with the claims of other class members. *Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988).

Given that any potential class injury would rely on the new POMS which are subsequent to any injury suffered by the named plaintiffs, it could not be said that the named plaintiffs have a typical injury. The plaintiffs injury based on the old POMS is moot, they have alleged no injury pursuant to the new POMS and, thus, they could not be proper representatives of a class of persons alleging injury under the new POMS.

888

tion is dismissed as this Court lacks jurisdiction and the Plaintiffs' motion for class certification is moot.